THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RICHARD BRELO,<br>Plaintiff,<br>v.<br>JO BIDEN, *et al.*,<br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-429-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

On June 17, 2024, the Plaintiff, Richard Brelo, filed this *pro se* prisoner civil-rights action from the Mesa County Detention Facility in Grand Junction, Colorado. Although there are some inconsistencies in his enumeration of the defendants, it appears that Mr. Brelo purports to sue "Jo Biden," Utah's governor, all truck stops in Utah and America (and perhaps Love's, Pilot, Flying J, and Petro specifically as well),[1] all public officials in America (current and former, except former President Carter) and their employees, and all attorneys. Dkt. No. 6 at 1, 6–7. He may also assert claims against "all . . . psychologist[s,] psychiatrist[s, and] [psychi]atric nurses," "all police officers," "all news media," "all governors" "who know this whole story" "of *Brelo v. USA*[,] *Obama*[, and] *Trump*," the "Morman church," "Grand Junction Police Officers Wien[,] Kent[, and] Lopez," the "Chief of Police [in] Grand Junction," "Doctor Cowell[,] Mesa County

---

[1] It is unclear whether Mr. Brelo intends to sue Loves, Pilot, Flying J, and Petro—which are presumably companies that franchise the numerous truck stops that use their names—*as well as all* truck stops in Utah and America, or whether he lists these companies by way of enumeration or illustration—*i.e.*, to make clear that the truck stops he seeks to sue comprise (or at least include) all truck stops affiliated with these companies.

Psychologist," "State Public Defender . . . Rebecca Barrett," the "Mesa County Sheriff," "Judge Henderson," "Magistrate Judge Matthew Harlin," "Attorney Carisa Acker [in] Grand Junction," and the "Mesa County District Attorney." *Id.* at 2, 3–4, 6. Elsewhere in the Complaint, Mr. Brelo also "moves" for relief against "George Bush and Jeb Bush defendants for all attack on twin towers crimes," the "State of Colorado to not forc[ibly] medicate me," "Meda County Detention Facility to provide me with paper[,] pen[s,] envelopes[, and] postage," the "US Marshal to seize 5 pleadings in [Judge] Henderson['s] court," the "Government to give me 1 million dollar reward" and to provide "witness protection under Patriot Act," and the "U.S. Military to protect me." *Id.* at 4–5. As the court understands the Complaint, however, the only allegations arguably related to Utah are the following:

> (a) that Utah's governor potentially knows the "story of *Brelo v. USA*[,] *Obama* and *Brelo v. Trump* treason cover up of terrorist plot [Mr. Brelo] stopped in Denver 2008 against Obama Biden," *id.* at 6;
>
> (b) that Mr. Brelo "has been to 25 Morman churchs [sic] with this whole story" and accuses these entities of "acts of treason under tax free status," *id.* at 2; and
>
> (c) (perhaps) that Love's, Pilot, Flying J, and Petro price gouge American citizens and throw citizens who are homeless off their property, *id.*

Having screened the Complaint under 42 U.S.C. § 1915(e)(2)(B), the court determines that Mr. Brelo's motion for final judgment is premature and that he has neither asserted any plausible (or even potentially plausible) claim against a defendant in Utah, nor alleged that "a substantial part of the events or omissions giving rise to [a valid] claim occurred" in Utah. 28 U.S.C. § 1391(b) (federal venue statute).

I.

Shortly after filing the complaint, Mr. Brelo filed a document styled as a "Motion for Million Dollar Reward." Dkt. No. 9 at 1. In the motion, Mr. Brelo seeks not only this reward, but also an order placing him in witness protection. Attached to that motion as an "exhibit" is a longer document containing what appear to be several motions: a "Motion For Farreta hearing" in Denver County Probate Court, a "motion for new Attorney" in Mesa County Court," and finally a "notice to court" in the District of Utah that the plaintiff "submits pleading in Denver Probate Court [in] Forced medication case 24 MH 510" and has "served" "doctors Salem and Work and hospital Administrator by personal name" on May 10, 2024. Dkt. No. 9-1 at 1–8.

To the extent Mr. Brelo seeks final relief, his motion is premature. The Defendants have not yet been served and will not be served until the screening process is complete and a court determines that Mr. Brelo has asserted a plausible claim to relief. *See* 28 U.S.C. § 1915. Once served, the Defendants will have an opportunity to file a motion to dismiss. *See* Fed. R. Civ. P. 12. If the Defendants choose not to do so or the court denies the motion, Rule 8(b)(1) requires the Defendants to then file an answer "stat[ing] in short and plain terms [their] defenses to each claim asserted against [them]; and admit[ting] or deny[ing] the allegations asserted." At that point and no earlier, Mr. Brelo may seek judgment on the pleadings. *See* Rule 12(c). Alternatively, Mr. Brelo may await discovery and then seek summary judgment. *See* Rule 56.

If Mr. Brelo's motion is instead interpreted as a request for preliminary equitable relief, such as a preliminary injunction or temporary restraining order, Mr. Brelo has not come close to making a "clear showing that [he] is entitled to such" "an extraordinary remedy." *Winter v.*

3

*Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). His motion is accordingly denied without prejudice.

## II.

After carefully reviewing the complaint, the court has been unable to find any allegation of an affirmative link between a state actor within Utah and a plausible violation of Mr. Brelo's civil rights. According to the Complaint, Mr. Brelo brings this suit against state or local officials under 42 U.S.C. § 1983 and against federal officials under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). *See* Dkt. No. 6 at 7. Section 1983 provides a private right of action only against defendants who act "under color of any statute, ordinance, regulation, custom, or usage, of any State."). And a claim under *Bivens* can lie only against a defendant who acts "under a claim of federal authority." 403 U.S. at 394. It follows that Mr. Brelo may only assert claims in this suit against government actors.

The only government actor listed, Utah's governor, is alleged to have done nothing more than *know about* a treasonous "cover up of terrorist plot [Mr. Brelo] stopped in Denver 2008 against Obama Biden." Dkt. No. 6 at 6. This assertion does not meet the threshold for alleging that Utah's governor violated any of Mr. Brelo's federal rights. After all, a plaintiff bringing claims under Section 1983 may not receive relief "without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant 'personally participated in the alleged constitutional violation' at issue." *Estate of Roemer v. Johnson*, 764 F. App'x 784, 790 (10th Cir. 2019) (quoting *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018)).

The other two named defendants in Utah are not government actors; they are instead the "Morman church" and (perhaps) Love's, Pilot, Flying J, and Petro.[2] To be sure, Mr. Brelo argues that "church[e]s should be under color of federal law" as they are "tax exempt under Government to serve com[m]unity and God," and that "truck stops [act] under [color of] state law" because they are "licensed under state law." Dkt. No. 6 at 4. This will not do. A religious organization's exemption from certain taxes does not render that entity a federal actor—if it did, such exemptions would be difficult to square with the Establishment Clause. *Cf. Walz v. Tax Commission of City of New York*, 397 U.S. 664 (1970) (holding that such exemptions do not violate the Establishment Clause). And to the extent Mr. Brelo's argument regarding truck stops applies to Love's, Pilot, Flying J, and Petro—each of which presumably franchise numerous truck stops in Utah—it is clear that a truck stop's licensure does not make it a state actor. *Cf.*

---

[2] To the extent Mr. Brelo also purports to sue all truck stops in Utah, Nevada, and elsewhere in America, he appears to attempt to sue a defendant class. Mr. Brelo also purports to name several other defendant classes: "all . . . public officials," "all judges," "all attorneys," etc., at least some of whose members surely reside in Utah.

Whether defendant classes are permitted under the Federal Rules is unsettled law. *See, e.g.*, *Thompson v. Board of Educ. Of Romeo Cmty. Sch.*, 709 F.2d 1200, 1204 (6th Cir. 1983) (concluding that the Rules "contemplate[] certification of a plaintiff class against a single defendant, not the certification of a defendant class"); *Henson v. East Lincoln Twp.*, 814 F.2d 410, 417 (7th Cir. 1980) (similar). In all events, Mr. Brelo would need to move to certify these classes under Federal Rule of Civil Procedure 23—and the court would need to grant that motion—before his suit could proceed against members of these classes.

Although the undersigned would be a member of more than one of these defendant classes, if certified, that fact does not preclude the undersigned's assignment to this case or the issuance of this order. Because none of these classes has been certified, the undersigned is not a party to the action at this time. Further, if "all Article III judges have an interest in the outcome" of a case, the rule of necessity, "a well-settled principle at common law" dating to the fifteenth century, requires an otherwise disqualified judge to hear the case that "cannot be heard otherwise." *United States v. Will*, 449 U.S. 200, 212–13 (1980).

*Szymonik v. Connecticut*, 807 Fed. App'x 97, 102 (2nd Cir. 2020) (holding that a license to practice law does render every attorney a state actor).

In short, Mr. Brelo has stated neither a valid Section 1983 claim nor a valid *Bivens* claim against any defendant in the District of Utah. *See* 28 U.S.C. § 1391(b)(1). Nor has he stated any claim for which "a substantial part of the events or omissions giving rise to [that] claim" occurred in the District of Utah. *Id.* § 1391(b)(2). Unless "there is no district in which an action may otherwise be brought," it follows that venue is not proper in this district.[3] *Id.* §1391(b)(3).

When filing this Complaint, the Plaintiff appears to have been incarcerated in Colorado; and the "substantial part of the events or omissions giving rise to [a potentially valid] claim," *id.* § 1391(b)(2), appear to have occurred, if at all, in the District of Colorado, *see* Dkt. No. 6 at 2–5. A district court "may transfer any civil action to any other district or division where it might have been brought" if "the convenience of parties and witnesses" or "the interest of justice" demand. 28 U.S.C. § 1404(a).

---

[3] After arguing that the Church and the truck stops act under color of law, Mr. Brelo states in passing that "if not, both [are] sued under d[iversity] jurisdiction for discrimination of homeless[,] a class of people under the Civil Rights Act." Dkt. No. 6 at 4. The court understands this allegation to pertain only to the truck stops he apparently seeks to sue as a class (and perhaps to Love's, Pilot, Flying J, and Petro as well), who he alleges have had the "homeless t[h]rown out of truck stops and no trespassed from property." Dkt. No. 6 at 2. (The Church's misdeeds being limited to "Acts of Treason." *Id.*) But the invocation of this court's diversity jurisdiction would require that Mr. Brelo allege the citizenship of the truck stop defendants he seeks to sue. *See* 28 U.S.C. § 1332; *Carden v. Arkoma Associates*, 494 U.S. 185 (1990). Mr. Brelo has not done so.

If instead Mr. Brelo's discussion of the "Civil Rights Act [of 1965]" is understood to invoke this court's federal question jurisdiction under Section 1331 apart from his Section 1983 and *Bivens* claims, Mr. Brelo has wholly failed to allege any specific claim, let alone to link the putative defendants to each element the claim.

Docket Number 9, Motion for the Million Dollar Reward is accordingly **DENIED WITHOUT PREJUDICE** and this action is **TRANSFERRED** to the United States District Court for the District of Colorado.

**IT IS SO ORDERED.**

Dated this 31st day of March, 2025.
BY THE COURT:

Howard C. Nielson, Jr.
United States District Judge